# Bentley *v.* The State.

### *Murder.*

(Decided February 2, 1915.   67 South. 620.)

1. *Homicide; Evidence; Circumstances.*—Where the indictment was for manslaughter in the first degree, and it appeared that decedent was killed by being struck by an automobile of defendant as it was skidding after colliding with another car, thus rendering the fault of defendant in causing the collision material, and a witness for the state had testified from his examination of the cars immediately after the accident that defendant's car struck the other car on the right front wheel, it was error to exclude testimony of a properly qualified witness who examined the car shortly after the collision as to whether defendant's car was struck by the other car.

2. *Same.*—Intent not being an issue, and it being shown without conflict that decedent was killed by being struck by defendant's auto, it was error to admit as part of the res gestae the cries and prayers of the injured man while still penned beneath the car; such evidence could shed no light on any fact in controversy, and its only tendency was to arouse passion and prejudice in the minds of the jurors.

APPEAL from Montgomery City Court.

Heard before ARMSTEAD BROWN.

Louis Bentley was indicted and convicted of man slaughter in the second degree, and he appeals. Reversed and remanded.

L. A. SANDERSON, for appellant.   The court erred in admitting the evidence as to how long Moore lay there until he was carried away, and as to his cries and prayers while there.—16 Cyc. 1115.   The hypothetical question was altogether too general.—17 Cyc. 232.   Newell was qualified as an automobile expert, as were the others, and the court should have permitted it to be shown that they also examined the cars, and that the other car hit the car of defendant.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

PELHAM, P. J.—The defendant was indicted for manslaughter in the second degree for killing one J. H. Moore by negligently running over or against him with an automobile.

It appeared from the evidence on the trial without conflict that immediately preceding the occurrence which resulted in the automobile operated by the defendant "skidding" some 50 feet and running upon a pavement and crushing the said Moore, who was walking along the sidewalk, against a brick wall, and so injuring him that he died as a result of the injuries inflicted, there had been a collision at one of the street crossings in the city of Montgomery between the automobile operated by the defendant, known as the "Abraham" car, and another automobile, called the "Gay" car. It was a material inquiry in fixing criminal responsibility for the death of Moore on the defendant to show that the defendant was at fault in bringing about the collision. As having a tendency to prove this fact, different witnesses were allowed to testify for the state with respect to the condition and marks on the cars after the collision, and one witness, Doster by name, testified in behalf of the state that he examined the cars soon after the accident, and, after stating the condition of the Gay car, was allowed to give his judgment that "it was struck on the right front wheel." This witness was shown to have had eight years' experience with automobiles, but was not a mechanic. After the introduction of this evidence by the state, the defendant introduced one Fred Newell as a witness in his behalf, and, after showing on the preliminary examination that he was an automobile mechanic of ten years' experience, and that he had also examined the two cars within half an hour after the accident, the defendant's counsel asked the witness: "Where was the Abraham car hit?" The court was in error in

sustaining the solicitor's objection to this question, for aside from the fact that the evidence sought to be elicited by the question was otherwise competent, the ruling operated as a denial to the defendant, that concluded him from meeting with kind the evidence of an identical nature, tending to prove a material issue, that had been previously admitted in behalf of the state.—*Pollack v. Gunter & Gunter*, 162 Ala. 317, 320, 50 South. 155.

As the defendant was on trial charged with second degree manslaughter, there was no issue before the court of an intent, and, as the person's death who was alleged to have been killed as the result of being struck by the automobile operated by defendant was without conflict in the evidence shown to have been directly attributable to having been so struck we think the court should not have permitted the solicitor to prove against the defendant's objection that after the pedestrian was struck, and before he died, and while still pinned between the car and the wall, "he kept on repeating, 'God have mercy on me!'" and using similar expressions, prayers, or outcries. While this may have been part of the res gestæ, as ruled by the trial court in admitting proof of these outcries over the objection of the defendant, yet it had no legimate tendency to prove any issue or shed light on any matter in controversy before the court, and was calculated to be highly prejudicial to the defendant in arousing a feeling of sympathy, passion, or prejudice in the minds of the jury. The facts or circumstances of a transaction, to be admissible as forming part of the res gestæ, should be evidentiary of the litigated fact. It is only those contemporaneous circumstances, facts, and declarations growing out of the main fact which serve to illustrate, elucidate, or explain the character or quality of the act, or

show a motive for acting, that are properly admissible on the theory of being a part of the res gestæ.

Other matters presented by the record are without error requiring a reversal, but, for the errors pointed out, the judgment of conviction must be reversed, and the cause remanded.

Reversed and remanded.